**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MICHAEL MASTROPIETRO, JOHN MOSHER,
MICHAEL MARTELL, JOSEPH P. GROSS,
CHRISTOPHER SPRARAGEN, and BRIAN HART, as
Trustees of the I.B.E.W., Local 236 Health and Benefit
Fund and I.B.E.W. Local 236 Annuity Fund, and I.B.E.W.
Local 236,

                              Plaintiffs,

1:21-cv-1129 (BKS/ML)

v.

BURBANK ELECTRICAL CONTRACTOR, INC. and
DEAN BURBANK,

                              Defendants.

---

**Appearance:**

*For Plaintiffs:*
William Pozefsky
Pozefsky, Bramley & Murphy
90 State Street, Suite 1405
Albany, NY 12207

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

Plaintiffs Michael Mastropietro, John Mosher, Michael Martell, Joseph P. Gross, Christopher Spraragen, and Brian Hart, as trustees of the I.B.E.W. Local 236 Health and Benefit Fund, the I.B.E.W. Local 236 Annuity Fund (collectively, the "Funds"), and I.B.E.W. Local 236 (the "Union"), filed this action against Defendants Burbank Electrical Contractor, Inc. ("Burbank") and Dean Burbank, alleging that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and the Labor-Management

Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 141 et seq., and committed conversion under New York state law. (Dkt. No. 1). Defendants have not answered the complaint or otherwise appeared in this action. Presently before the Court is Plaintiffs' motion pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for default judgment. (Dkt. No. 14). Plaintiffs seek a monetary judgment against Defendants for amounts due to the Funds and Union, as well as costs and attorney's fees. For the following reasons, Plaintiffs' motion for default judgment is denied without prejudice.

## II. DISCUSSION

### A. Standard of Review & Clerk's Entry of Default

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* N.D.N.Y. L.R. 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person[,] (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . [,] and (3) it has properly served the pleading to which the opposing party has not responded"). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* N.D.N.Y. L.R. 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . , a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

2

On November 23, 2021, Plaintiffs served Defendants with the summons and complaint. (Dkt. No. 6-1, ¶ 2; *see* Dkt. Nos. 4–5). On January 7, 2022, Plaintiffs requested a clerk's entry of default under Rule 55(a) for Defendants' "fail[ure] to answer or otherwise appear" in this action. (Dkt. No. 6). Plaintiffs' request was denied for failure to submit an affidavit which complied with Local Rule 55.1. (Dkt. Nos. 9–10). Plaintiffs renewed their request for a clerk's entry of default on February 23, 2022 accompanied by an affidavit, as required by Local Rule 55.1, showing that: Defendant Burbank is a corporation and thus is not an infant, in the military, or incompetent; Defendant Dean Burbank is not an infant, in the military, or incompetent; Defendants failed to appear in this action; and Plaintiffs properly served the summons and complaint. (Dkt. No. 11, at 3). On February 24, Plaintiffs received a clerk's entry of default against both Defendants. (Dkt. No. 12). Plaintiffs filed the instant motion for default judgment under Rule 55(b) on March 31. (Dkt. No. 14). Although Plaintiffs served the motion on Defendants, (*see* Dkt. No. 15 (certificate of service)), Defendants filed no response. Therefore, Plaintiffs have met the procedural requirements and are entitled to an order of default under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b). Accordingly, the Court will address liability.

### B. Liability

By failing to appear in this action or oppose this motion, Defendants are deemed to have admitted the factual allegations in the complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (citation omitted)); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as

true, and the court will then analyze those facts for their sufficiency to state a claim."), *report and recommendation adopted*, 2011 WL 1130457, 2011 U.S. Dist. LEXIS 32246 (E.D.N.Y. Mar. 28, 2011). But before entering default judgment, the Court must review the allegations to determine whether Plaintiffs have stated a valid claim for relief. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004).

    1.    **ERISA Causes of Action**

        a.    **ERISA § 515 (29 U.S.C. § 1145)**

Under Section 515 of ERISA:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

According to the First Cause of Action, Defendant Burbank is liable under ERISA for failing to remit required payments and contributions to the Funds. (Dkt. No. 1, ¶¶ 13–23). Plaintiffs allege that Burbank is an "employer in an industry affecting commerce as defined in Section 3(5)(11) and (12) of ERISA," (*id.* ¶ 12), and that the Funds are both multi-employer funds and employee benefit plans as defined under ERISA §§ 3(37) and (3), respectively, (*id.* ¶ 9). Plaintiffs also allege that Burbank "agreed to be bound by the Small Works Addendum to the Inside Agreement between Local 236 and the Albany Electric Contractors Association, NECA, Albany Chapter and the Union for the periods from January 1, 2007 to the present" (the "Agreement"). (*Id.* ¶ 12). Burbank's employees who were covered by the Agreement ("Covered Employees") are participants in "employee benefit plans and multi-employer plans maintained pursuant to a collective bargaining agreement." (*Id.*). The Agreement, as well as "Trust

4

Agreements" and "rules and practices of the Funds," obligated Burbank to "submit to the Funds monthly written reports . . . describing the employees of Defendant Burbank covered by the Agreement, the hours worked by such Covered Employees and the payments or contributions to be made for such Covered Employees," and to file such reports and make payment to Plaintiffs "of all amounts due as shown" "no later than 15 calendar days following the end of each calendar month in which the work covered by the Agreement is performed." (*Id.* ¶ 16). Burbank is also liable under the Agreement "for interest on [] unpaid contributions." (*Id.* ¶ 17). The complaint alleges that Burbank filed the required monthly reports for the period of April 2019 through February 2020 but failed "to make the required payments and contributions shown to be due thereon." (*Id.* ¶ 18). However, the complaint does not reflect any language or terms from the Agreement, Trust Agreements, or other Funds documents. The Court therefore declines to enter a finding of liability until after Plaintiffs have submitted the agreements at issue.[1]

### b.   Dean Burbank

Plaintiff's Fourth Cause of Action alleges that individual Defendant Dean Burbank is personally liable, as a fiduciary of the Funds, for the delinquent contributions owed under ERISA and accrued interest. (Dkt. No. 1, ¶¶ 28–38).

Under ERISA, a person is a "fiduciary" with respect to a plan, in relevant part, to the extent he "exercises any discretionary authority or discretionary control respecting management

---

[1] Furthermore, while Plaintiffs allege that Burbank "also owes interest . . . for late payments for the months of October and December[] 2018 and January and February[] 2019," (Dkt. No. 1, ¶ 22), interest on untimely payments made prior to filing suit are not recoverable under ERISA. *Finkel v. Allstate Elec. Corp.*, No. 09-cv-4071, 2010 WL 5558899, at *5, 2010 U.S. Dist. LEXIS 139084, at *14 (E.D.N.Y. Nov. 24, 2010) ("ERISA does not permit damages for contributions paid prior to filing suit, even when those contributions were untimely paid." (citations omitted)), *report and recommendations adopted*, 2011 WL 63600, 2011 U.S. Dist. LEXIS 1489 (E.D.N.Y. Jan. 6, 2011). Such interest may be recoverable "pursuant to a theory of contract law under the LMRA," if the plans or funds at issue provide a contractual basis for such an award. *Finkel v. Robco Elec. Corp.*, No. 11-cv-2353, 2012 WL 3306963, at *6, 2012 U.S. Dist. LEXIS 113818, at *19 (E.D.N.Y. Mar. 30, 2012), *report and recommendation adopted*, 2012 WL 3307631, 2012 U.S. Dist. LEXIS 113837 (E.D.N.Y. Aug. 13, 2012) (citations omitted). Plaintiffs have not alleged such a contractual basis here.

of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). To establish liability, Plaintiffs must "show both that (1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009). Under ERISA, a fiduciary with respect to a plan must discharge his duties "solely in the interest of the participants and beneficiaries" and is prohibited from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. §§ 1104(a)(1), 1106(b)(1).

First, while the complaint alleges that "[a]mounts owing to the Funds, as ERISA Funds, became assets of the Funds on the dates that Defendant Burbank was required to contribute those amounts to the Funds," (Dkt. No. 1, ¶ 30), this conclusory allegation does not indicate whether the relevant agreement(s) contractually provide that unpaid contributions are plan assets on the date Burbank was required to make those contributions. Thus, the Court declines to enter a finding of liability as a fiduciary against Dean Burbank before Plaintiffs provide the agreements at issue. *See Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-cv-884, 2009 WL 3497493, at *3, 2009 U.S. Dist. LEXIS 101778 at *6 (E.D.N.Y. Sep. 25, 2009) ("While unpaid employer contributions are not ordinarily assets of the plan, the parties to an agreement are free to provide otherwise."), *report and recommendation adopted*, 2009 WL 3497493, at *1, 2009 U.S. Dist. LEXIS 101772 (E.D.N.Y. Oct. 28, 2009).

Second, according to the complaint, Dean Burbank was at all relevant times the "President, Chief Operating Officer[,] and a stock holder of Defendant Burbank." (Dkt. No. 1, ¶ 11). Plaintiffs allege that Dean Burbank was "ultimately responsible for determining the corporate accounts of Defendant Burbank" and for the "disposition of the income and assets of Defendant Burbank, including whether and when to pay the amounts Defendant Burbank owed

to the Fund[s]." (*Id.* ¶ 31). Dean Burbank was "responsible for determining" payments to Burbank's creditors and suppliers "and the order, amount, and timing of all such payments." (*Id.*). Plaintiffs further allege that Dean Burbank "divert[ed] or authoriz[ed] the diversion of assets of the Funds . . . for his own use and benefit or the use and benefit of others, to the extent that he failed to segregate or to see to the segregation of monies needed by Defendant Burbank to pay the Funds." (*Id.* ¶ 36). Thus, the complaint adequately alleges that Dean Burbank exercised a level of control over plan assets sufficient to show that he was a fiduciary under ERISA and that he breached his duties by withholding contributions. *See Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015) (explaining that "where a complaint alleges that an individual is 'responsib[le] for determining which of the company's creditors would be paid or in what order . . . or otherwise enjoyed authority or control over [ ] management,' the individual is a fiduciary" (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 86 (2d Cir. 2009))).

        2.      **LMRA Cause of Action**

"Section 301 of the LMRA provides a federal cause of action for suits for violation of contracts between an employer and a labor organization." *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016) (internal quotation marks and alteration omitted); 29 U.S.C. § 185(a). "Under Section 301 of the LMRA, an employer may be held liable for failing to remit dues or contributions to a labor organization as required under the terms of a [collective bargaining agreement]." *Mason Tenders Dist. Council Welfare Fund v. Shelbourne Constr. Corp.*, No. 19-cv-7562, 2020 WL 7028530, at *5, 2020 U.S. Dist. LEXIS 223588, at *13–14 (S.D.N.Y. Nov. 30, 2020) (citation omitted).

The Court infers that the Second Cause of Action is a claim to contractual damages under the LMRA. (Dkt. No. 1, ¶ 24). Plaintiffs allege that the Union is a labor organization within the

7

meaning of the LMRA, (*id.* ¶ 8), and that Burbank is an employer bound to the Agreement, (*id.* ¶ 12). Plaintiffs allege that the Agreement obligated Burbank to (1) "deduct Union Dues from the gross weekly wages of each of Defendant's Union-member employee[s] covered by the Agreement employed by Defendant Burbank under the Agreement and to remit them to the Union no later than 15 calendar days following the end of each calendar month in which the work covered by the Agreement is performed and in which they were deducted"; and (2) "make payments to the Joint Apprenticeship Training Committee ["J.A.T.C."] for each hour of work for each of Defendant's said employees covered by the Agreement no later than 15 calendar days following the end of each calendar month in which the work covered by the Agreement is performed." (*Id.* ¶ 24). Plaintiffs allege that Burbank was required to remit union dues and make contributions to the J.A.T.C. under the Agreement but failed to do so for the period of April 2019 through February 2020. (*See id.*). However, in the absence of specific language or terms from the Agreement, or the document itself, the Court declines to enter a finding of liability on Plaintiffs' LMRA claim at this time.

### 3. Third Cause of Action

Plaintiffs' Third Cause of Action alleges that an audit was conducted of Burbank's books and revealed that Burbank owes "additional amounts of $4,460.00 to the Health and Benefit Funds, $557.50 to the Annuity Fund, $278.75 to the J.A.T.C.[,] and $657.61 to the Union." (Dkt. No. 1, ¶¶ 25–27). The Court infers that Plaintiffs are alleging that Burbank is liable for the "additional amounts" owed to the Funds under ERISA and for the additional amounts owed to the J.A.T.C. and the Union under the LMRA. However, Plaintiffs have not adequately alleged how Burbank is liable for these "additional amounts." Plaintiffs have not alleged any factual details regarding Burbank's obligations, the breach of those obligations, when any such breach occurred, or how (if at all) these amounts are related to the failure to make contributions or


payments for the period of April 2019 to February 2020. Accordingly, the Court finds that the Third Cause of Action does not sufficiently allege any liability on the part of Burbank.

### 4. Fifth and Sixth Causes of Action

Plaintiffs' Fifth Cause of Action, which their motion for default judgment does not specifically address, is for conversion under New York state law. (Dkt. No. 1, ¶¶ 39–43).[2] According to Plaintiffs, to the extent the union dues "were deducted from the gross wages of employees, such monies represent monies earned by said employees but not paid to them or for their benefit" and accordingly were "wrongfully converted." (*Id.* ¶ 40). "[T]o succeed on a cause of action to recover damages for conversion, a plaintiff must show (1) legal ownership or an immediate right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's right." *Giardini v. Settanni*, 159 A.D.3d 874, 875 (2d Dep't 2018) (citations omitted); *see also Bricklayers Ins. & Welfare Fund v. McGovern & Co., LLC*, No. 17-cv-6067, 2019 WL 2271942, at *9, 2019 U.S. Dist. LEXIS 37056, at *22–23 (E.D.N.Y. Mar. 6, 2019) (holding defendant liable for conversion of union due deductions under New York law), *report and recommendation adopted*, 2019 WL 1772399, 2019 U.S. Dist. LEXIS 68698 (E.D.N.Y. Apr. 23, 2019). Again, however, the Court declines to enter a finding of liability on Plaintiffs' conversion claim until Plaintiffs submit the relevant Agreement(s) and specific terms.[3]

Finally, while the complaint contains a Sixth Cause of Action for equitable relief, (*see* Dkt. No. 1, ¶¶ 44–48), Plaintiffs do not seek equitable relief in their motion for default judgment, (Dkt. No. 14-4, at 5; Dkt. No. 14-1, ¶ 14).

---

[2] The Court has supplemental jurisdiction over Plaintiffs' state-law claim under 28 U.S.C. § 1367(a).

[3] The Court further notes that, assuming a finding of liability, Plaintiffs will only be able to recover the deducted but unpaid union dues once as part of the LMRA claim, *supra*.

9

### C. Damages

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). "Magistrate judges and district courts have interpreted this to mean that . . . damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order).

Based on Defendants' violations of ERISA and the LMRA for the period of April 2019 to February 2020, Plaintiffs seek to recover: $25,224.76 in unpaid amounts due to the Funds; $3,757.61 in interest calculated through March 31, 2022 plus per diem interest "until paid"; $3,650.74 in working dues; $1,401.38 in owed contributions to the J.A.T.C.; $590.00 in costs associated with this action; and $3,500.00 in attorney's fees. (Dkt. No. 14-1, ¶¶ 8–13).[4]

While the Court does not make a finding of liability at this time, the Court addresses the documentation Plaintiffs have submitted in support of their damages request. Plaintiffs have submitted affidavits, based on personal knowledge, from Samantha Serson, the Contribution Accounting Processor for Zenith American Solutions, the Administrator of the Funds; Evelyn Ostrander, Officer Manager for the Union; and William Pozefsky, Plaintiffs' counsel. (Dkt. Nos.

---

[4] These figures do not include the "additional amounts" Plaintiffs assert are owed pursuant to an audit or interest on late payments. (*See* Dkt. No. 1, ¶¶ 22, 25–27). The figures are derived from the motion for default judgment and supporting papers, and differ slightly from the figures in the complaint.

10

14-1, 14-2, 14-3). However, there is no admissible evidence in the record regarding the terms of the Agreement under which Defendants' obligations arose, (*see* Dkt. No. 1, ¶ 12), and Ms. Serson does not explain how the damages figures were calculated. The Court cannot calculate damages based on Plaintiffs' ERISA and LMRA claims without reviewing the terms of the Agreement itself or the monthly reports Burbank filed for the relevant time period. *See Trs. of Metal Polishers Local 8A-28A Funds v. Prestige Restoration & Maint., LLC*, 986 F. Supp. 2d 159, 165 & n.2 (E.D.N.Y. 2013) (collecting cases where a plaintiff's request for damages was denied due to inadequate authentication and/or unsupported and conclusory assertions of damages owed); *Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Local Union No. 71 v. Lovejoy Metals, Inc.*, 495 F. Supp. 3d 174, 188–89 (W.D.N.Y. 2020) (denying claim for damages arising from unpaid contributions to funds where the plaintiffs did not provide "adequate explanation" and there was a "lack of clarity in their submissions demonstrating how they arrived at the calculations"); *see also Hitachi Med. Sys. Am., Inc. v. Desert Radiology, LLC*, No. 10-cv-1029, 2010 WL 2710584, at *1, 2010 U.S. Dist. LEXIS 78263, at *4 (N.D. Ohio July 8, 2010) (requiring plaintiff to submit copies of "any and all relevant agreements that were not appended to the Complaint" in order to determine whether plaintiff is entitled to costs and attorney's fees). Nor have Plaintiffs provided any evidence in admissible form, such as billing records and hourly rates, substantiating their request for an award of attorney's fees and costs. *See Trs. of Metal Polishers Local 8A-28A Funds*, 986 F. Supp. 2d at 168–69 (adopting recommendation that application for attorney's fees be denied where the plaintiff failed to submit contemporaneous time records); *Lovejoy Metals*, 495 F. Supp. 3d at 192–93 (noting that a "fee applicant bears the burden of adequately documenting and itemizing the costs required").

Accordingly, in connection with any renewed motion for default judgment, Plaintiffs are directed to file and serve: (1) evidence in admissible form, from individuals with personal knowledge, with respect to the terms of the Agreement, the Agreement itself, and the damages resulting from Defendants' breaches; and (2) evidence in admissible form substantiating Plaintiffs' request for an award of attorney's fees and costs.

## III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for default judgment (Dkt. No. 14) is **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiffs must file any renewed motion for default judgment within 30 days of the date of this Decision, curing the deficiencies identified and including both the relevant agreements and evidence in admissible form substantiating Plaintiffs' request for damages, attorney's fees, and costs. If Plaintiffs do not wish to file a renewed motion for default judgment, they must notify the Court within 30 days of the date of this Decision; and it is further

**ORDERED** that Plaintiffs serve copies of this Memorandum-Decision and Order on Defendants and file a certificate of service.

**IT IS SO ORDERED.**

Dated: October 17, 2022
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge