UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL MASTROPIETRO, JOHN MOSHER,
MICHAEL MARTELL, JOSEPH P. GROSS,
CHRISTOPHER SPRARAGEN, and BRIAN HART, as            1:21-cv-1129 (BKS/ML)
Trustees of the I.B.E.W., Local 236 Health and Benefit
Fund and I.B.E.W. Local 236 Annuity Fund, and I.B.E.W.
Local 236,

                                          Plaintiffs,

v.

BURBANK ELECTRICAL CONTRACTOR, INC. and
DEAN BURBANK,

                                          Defendants.
_____

**Appearance:**

*For Plaintiffs:*
William Pozefsky
Pozefsky, Bramley & Murphy
90 State Street, Suite 1405
Albany, NY 12207

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

      Plaintiffs Michael Mastropietro, John Mosher, Michael Martell, Joseph P. Gross, Christopher Spraragen, and Brian Hart, as trustees of the I.B.E.W. Local 236 Health and Benefit Fund, the I.B.E.W. Local 236 Annuity Fund (collectively, the "Funds"), and I.B.E.W. Local 236 (the "Union"), filed this action against Defendants Burbank Electrical Contractor, Inc. ("Burbank") and Dean Burbank, alleging that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and the Labor-Management

Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 141 et seq., and committed conversion under New York state law. (Dkt. No. 1). Defendants have not answered the complaint or otherwise appeared in this action. Presently before the Court is Plaintiffs' renewed motion pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for default judgment. (Dkt. No. 20).[1] Plaintiffs seek a monetary judgment against Defendants for amounts due to the Funds and Union, as well as costs and attorney's fees. For the following reasons, Plaintiffs' motion for default judgment is granted.

## II.  BACKGROUND

Plaintiffs brought their initial motion for default judgment on March 31, 2022. (Dkt. No. 14). The Court denied the motion without prejudice because Plaintiffs had not provided the agreements underlying their claims or adequately supported their request for damages and attorney's fees and costs. (*See generally* Dkt. No. 16). The Court assumes familiarity with the facts of this case, as set forth in its previous decision.

## III.  DISCUSSION

### A.  Liability

#### 1.  ERISA Causes of Action

##### a.  ERISA § 515 (29 U.S.C. § 1145)

Under Section 515 of ERISA:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

---

[1] Plaintiffs' renewed motion for default judgment consists of supplemental affidavits and supporting materials to "supplement the Affidavits previously filed" with the initial motion for default judgment. (Dkt. No. 20). Thus, the Court has construed Plaintiffs' latest submission as a renewed motion for default judgment which incorporates the materials filed with the initial motion for default judgment. (*See* Dkt. No. 14). Plaintiffs served the renewed motion for default judgment on Defendants, who have not responded. (Dkt. No. 21).

29 U.S.C. § 1145.

According to the First Cause of Action, Defendant Burbank is liable under ERISA for failing to remit required payments and contributions to the Funds. (Dkt. No. 1, ¶¶ 13–23). As noted in the Court's ruling on Plaintiffs' initial motion for default judgment, Plaintiffs allege that Burbank was obligated by the "Small Works Addendum to the Inside Agreement between Local 236 and the Albany Electric Contractors Association, NECA, Albany Chapter and the Union for the periods from January 1, 2007 to the present" (the "Agreement"), "Trust Agreements," and "rules and practices of the Funds" to "submit to the Funds monthly written reports . . . describing the employees of Defendant Burbank covered by the Agreement, the hours worked by such Covered Employees and the payments or contributions to be made for such Covered Employees," and to file such reports and make payment to Plaintiffs "of all amounts due as shown" "no later than 15 calendar days following the end of each calendar month in which the work covered by the Agreement is performed." (*Id.* ¶¶ 12, 16). Burbank is also liable under the Agreement "for interest on [] unpaid contributions." (*Id.* ¶ 17). The complaint alleges that Burbank filed the required monthly reports for the period of April 2019 through February 2020 but failed "to make the required payments and contributions shown to be due thereon." (*Id.* ¶ 18). However, because the complaint did not "reflect any language or terms from the Agreement, Trust Agreements, or other Funds documents," the Court declined to enter a finding of liability. (Dkt. No. 16, at 4–5).

Plaintiffs have now submitted the agreements at issue. (*See* Dkt. No. 20-4 (Letters of Assent; Inside Agreement effective June 1, 2018; Inside Agreement effective June 1, 2019; and Small Works Addendum effective January 1, 2007)). Section 6.02 of the Inside Agreement effective June 1, 2018 provides: "The Employer shall contribute [$11.76] per hour for each

3

electrical worker employed by him in the jurisdiction of the Local Union into the Health/Welfare Fund of such Local." (Dkt. No. 20-4, at 28). Section 6.02 of the Inside Agreement effective June 1, 2019 contains a similar provision requiring the employer to contribute $12.10 per hour to a Local's Health/Welfare Fund. (*Id.* at 62). Similarly, Section 6.04 of each Inside Agreement requires the employer to make certain contributions to an annuity fund. (*Id.* at 28 (Inside Agreement effective June 1, 2018 providing: "[T]he Employer shall contribute [$2.90] per hour for each Journeyman Wireman and third through sixth period apprentices"), 62 (identical provision in Inside Agreement effective June 1, 2019)). The Inside Agreements also provide that Burbank is liable for interest on unpaid contributions. (*Id.* at 64 ("[A]ny Employer who becomes delinquent in making payments to the respective trust funds shall be liable for the amount of delinquent contributions plus interest on the delinquent amount at the rate of 2 percentage points over the prime rate per annum."); Dkt. No. 20-6, at 59 (same)). Finally, the Small Works Addendum to the Inside Agreements, which has been in force since January 1, 2007, provides: "All contributions listed above [are] to be sent together with a completed payroll report prescribed by the Trustees mailed to reach the Trustees or the designated agent of the Trustees no later than 15 calendar days following the end of each calendar month." (Dkt. No. 20-4, at 76).

Accordingly, by virtue of the above contractual provisions, Plaintiffs' allegations that Burbank filed the required monthly reports for the period of April 2019 through February 2020 but failed "to make the required payments and contributions shown to be due thereon" are sufficient to establish Burbank's liability for delinquent contributions and deductions under ERISA, as well as for the interest due thereon. *See United States v. Beam*, No. 12-cv-87, 2012 WL 1802316, at *2, 2012 U.S. Dist. LEXIS 69054, at *4 (N.D.N.Y. May 17, 2012) ("By failing to answer plaintiff's complaint or oppose this motion, defendant has effectively conceded that

4

[it] is bound by the terms of the [Agreement] [it] entered into with plaintiff."); *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016) (finding the defendant liable to the plaintiff funds under Section 505 of ERISA, 29 U.S.C. § 1145 for failing, *inter alia*, to pay delinquencies).

### b. Dean Burbank

Plaintiff's Fourth Cause of Action alleges that individual Defendant Dean Burbank is personally liable, as a fiduciary of the Funds, for the delinquent contributions owed under ERISA and accrued interest. (Dkt. No. 1, ¶¶ 28–38). Under ERISA, a person is a "fiduciary" with respect to a plan, in relevant part, to the extent he "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). To establish liability, Plaintiffs must "show both that (1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009).

The Court previously determined that the complaint adequately alleges that Dean Burbank exercised a level of control over plan assets sufficient to show that he was a fiduciary under ERISA and that he breached his duties by withholding contributions, but that the complaint did not plausibly allege that the unpaid contributions were plan assets on the date Burbank was required to make those contributions. (Dkt. No. 16, at 6–7). To cure this deficiency, Plaintiffs' attorney William Pozefsky submits: (1) a one-page "Amendment to Agreement and Declaration of Trust of the Local Union No. 236 Annuity Fund" dated November 28, 2006; and (2) an unsigned copy of the "Restated Agreement and Declaration of Trust of the I.B.E.W. Local No. 236 Health and Benefit Fund." (Dkt. No. 20-6, at 2–55).[2] These documents, which remain in

---

[2] Attorney Pozefsky asserts that he prepared the Restated Agreement as attorney for the Funds in 2006 and that the agreement was "approved unanimously by the Trustees by Motion at their meeting on July 18, 2006 and was signed

force today, (Dkt. No. 20-5, ¶ 13), both provide that employer contributions are plan assets when due. (Dkt. No. 20-6, at 12–13 (Health and Benefit Fund Restated Agreement providing: "The Trustees are hereby vested with all right, title and interest in and to all such Employer contributions, which shall be deemed to be assets of the Health and Benefit Fund when due, together with all interest which may accrue thereon."), 55 (identical provision as to Annuity Fund)).

Accordingly, the Court concludes that Dean Burbank is individually liable under ERISA as a fiduciary for the delinquent contributions to the Funds and accrued interest.

### 2. LMRA Cause of Action

"Section 301 of the LMRA provides a federal cause of action for suits for violation of contracts between an employer and a labor organization." *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016) (internal quotation marks and alteration omitted); 29 U.S.C. § 185(a). "Under Section 301 of the LMRA, an employer may be held liable for failing to remit dues or contributions to a labor organization as required under the terms of a [collective bargaining agreement]." *Mason Tenders Dist. Council Welfare Fund v. Shelbourne Constr. Corp.*, No. 19-cv-7562, 2020 WL 7028530, at *5, 2020 U.S. Dist. LEXIS 223588, at *13–14 (S.D.N.Y. Nov. 30, 2020) (citation omitted).

The Second Cause of Action is a claim to contractual damages under the LMRA. (Dkt. No. 1, ¶ 24). The Court previously noted that Plaintiffs allege that the Union is a labor organization within the meaning of the LMRA, (*id.* ¶ 8); that Burbank is an employer bound to the Agreement, (*id.* ¶ 12); and that Burbank was required to remit union dues and make

---

by the Trustees present at the next Board of Trustees Meeting on November 2, 2006." (Dkt. No. 20-5, ¶ 12; *see also* Dkt. No. 20-6, at 57 (meeting minutes indicating that the "Trustees present signed the documents as provided by W. Pozefsky")). Attorney Pozefsky has been unable to locate a signed copy. (Dkt. No. 20-5, at ¶ 12).

6

contributions to the Joint Apprenticeship Training Committee ["J.A.T.C."] under the Agreement but failed to do so for the period of April 2019 through February 2020, (*id.* ¶ 24). However, the Court declined to enter a finding of liability on Plaintiffs' LMRA claim in the absence of the agreements at issue or more specific contractual terms. (Dkt. No. 16, at 7–8).

Both Inside Agreements provide: "The Employer agrees to deduct and forward to the Financial Secretary of the Local Union, upon receipt of a voluntary written authorization, the additional working dues from the pay of each I.B.E.W. member. The amount to be deducted shall be the amount specified in the approved Local Union By-Laws." (Dkt. No. 20-4, at 16 (Inside Agreement effective June 1, 2018), 49 (Inside Agreement effective June 1, 2019)). Plaintiff Michael Mastropietro, the Union's Business Manager, asserts that "[e]ach of the Construction Wiremen members employed by Burbank during the delinquent months signed [an authorization] card," which were faxed to Burbank. (Dkt. No. 20-3, ¶ 7; *see* Dkt. No. 20-4, at 97–99 (copies of "Dues Deduction Authorization" cards for six employees)). With respect to the J.A.T.C., the Inside Agreements require an employer to "contribute the amount of funds specified by the parties' signatory to the local apprenticeship and training trust agreement." (Dkt. No. 20-4, at 27 (Inside Agreement effective June 1, 2018 providing that the "current rate of contribution is [$.50] per hour for each hour worked"), 61 (Inside Agreement effective June 1, 2019 providing that the "current rate of contribution is [$.63] per hour for each hour worked" and providing for scheduled increases)).

Accordingly, with the benefit of having the agreement terms at issue, the Court finds that Plaintiffs have adequately alleged that Burbank is liable under the LMRA for the failure to remit

7

union dues and make contributions to the J.A.T.C. for the period of April 2019 through February 2020, as required by the Agreement.[3]

### 3.     Third Cause of Action

Plaintiffs' Third Cause of Action alleges that an audit was conducted of Burbank's books and revealed that Burbank owes "additional amounts of $4,460.00 to the Health and Benefit Funds, $557.50 to the Annuity Fund, $278.75 to the J.A.T.C.[,] and $657.61 to the Union." (Dkt. No. 1, ¶¶ 25–27). The Court previously determined that the Third Cause of Action did not sufficiently allege any liability on the part of Burbank because Plaintiffs had not adequately alleged how Burbank was liable for these "additional amounts." (Dkt. No. 16, at 8–9).

In connection with their renewed motion for default judgment, Plaintiffs submitted a supplemental affidavit from Samantha Serson, the Contribution Accounting Processor for Zenith American Solutions, the Administrator of the Funds. (Dkt. No. 20-1). Ms. Serson asserts that, pursuant to the terms of the Inside Agreements, a payroll audit of Burbank was conducted for the period of June 15, 2015 to December 31, 2018. (*Id.* ¶¶ 18–20; *see also* Dkt. No. 20-2, at 30 (letter from Ms. Serson to Bubrank dated March 26, 2019 advising Burbank that it had "been selected for a compliance audit for the period January 1, 2015 – December 31, 2018" to "verify the accuracy of contributions that have been submitted" to the Funds); Dkt. No. 20-3, ¶ 3 (Mastropietro affidavit asserting that Burbank "has been an employer of Construction Wiremen members of Local 236 since at least June 10, 2015 when it signed Local 236's Letter of Assent-A")). The auditor found "additional amounts due for the period under review." (Dkt. No. 20-2, at 32 (auditor letter dated March 19, 2020)). Ms. Serson notified Burbank of the findings of the

---

[3] Because the Court enters a finding of liability against Burbank for unpaid union dues, the Court does not address Plaintiffs' Fifth Cause of Action for conversion under New York state law. (*See* Dkt. No. 1, ¶¶ 39–43). Nor does the Court address the Sixth Cause of Action for equitable relief, (*see id.* ¶¶ 44–48), as Plaintiffs have not sought any equitable relief in their motions for default judgment, (*see generally* Dkt. Nos. 14, 20).

8

audit, (*id.* at 34 (letter dated March 27, 2020)), and asserts that she "received nothing from Burbank disputing the audit's findings in response to the invitation in [her] letter" and did not "receive payment of the audited amount," (Dkt. No. 20-1, ¶ 20).

Because the additional amounts found to be due relate to payments for which Burbank is liable under the parties' agreements—contributions owed to the Funds and J.A.T.C., as well as union dues—the Court finds Burbank is also liable for the additional amounts due as revealed by the audit.

### B. Damages

A party's default "is not considered an admission of damages." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). "Magistrate judges and district courts have interpreted this to mean that . . . damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order).

Based on Defendants' violations of ERISA and the LMRA as revealed by the audit and for the period of April 2019 to February 2020, Plaintiffs seek to recover the following damages from Burbank: (1) $26,626.18 in delinquent contributions to the Funds and J.A.T.C.; (2) $5,228.39 in interest in delinquent contributions calculated through November 4, 2022 plus per diem interest until payment in full; (3) $3,613.99 in delinquent union dues; and (4) $5,296.25 in delinquencies revealed by the audit. (Dkt. No. 20-1, at 6–7). Plaintiffs also seek to hold Dean Burbank jointly liable for the following damages included in the amounts above: (1) $25,224.76 in delinquent contributions to the Funds; (2) $4,850.90 in interest on those delinquent

9

contributions calculated through November 3, 2022 plus per diem interest until payment in full; and (3) $5,017.50 in delinquencies revealed by the audit. (*Id.* at 7).[4] Plaintiffs also seek (1) attorney's fees in the amount of $3,125.00 for work performed from October 17, 2022 to date; (2) permission to file time records for work performed prior to October 17, 2022; and (3) the costs of the process server and filing fees for a total of $590.00. (Dkt. No. 20-5, ¶¶ 20–25).

> ERISA's civil enforcement provision provides:
>
> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A)    the unpaid contributions,
>
> (B)    interest on the unpaid contributions,
>
> (C)    an amount equal to the greater of—
>
>     (i)    interest on the unpaid contributions, or
>
>     (ii)   liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E)    such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

---

[4] These figures come from the supplemental affidavit of Ms. Serson and differ slightly from the figures in the complaint and the initial motion for default judgment.

In support of their request for damages, Plaintiffs have submitted affidavits by: Ms. Serson, the Contribution Accounting Processor for the Administrator of the Funds, (Dkt. No. 20-1); Michael Mastropietro, the Union's Business Manager, (Dkt. No. 20-3); and Attorney Pozefsky, (Dkt. No. 20-5). Attached to the affidavits are a number of exhibits, including the relevant agreements, the monthly contribution reports for the period of April 2019 to February 2020, charts prepared by Ms. Serson calculating the total delinquency amounts and interest due, correspondence regarding the audit, and Plaintiffs' counsel's billing records and itemization of costs. (*See generally* Dkt. No. 20). The Court therefore finds that an evidentiary hearing is unnecessary in this case because damages are calculable based upon the detailed affidavits and documentary evidence Plaintiffs have provided. Accordingly, the Court awards damages as follows.

### 1. Unpaid Contributions and Interest

The documentary evidence shows that Burbank owes Plaintiffs $26,626.18 in delinquent contributions, broken down as follows: $22,422.00 to the Health and Benefit Fund, $2,802.76 to the Annuity Fund, and $1,401.42 to the J.A.T.C. (*See* Dkt. No. 20-2, at 2–22 (monthly contribution reports from April 2019 to February 2020 indicating amounts due), 24 (chart prepared by Ms. Serson summarizing amounts due)). Accordingly, Plaintiffs are entitled to an award of $26,626.18 in delinquent contributions.

Plaintiffs seek to recover interest on the above delinquent contributions in the amount of $5,228.39, as calculated through November 3, 2022, plus interest from that date until the date of payment in full at a per diem rate of $14.324. (Dkt. No. 20-1, at 7). Plaintiffs are "entitled to interest on the unpaid contributions at the rates provided by the Trusts and [Agreements] or, where the Trusts and [Agreements] do not provide a rate, at a rate prescribed by 26 U.S.C. § 6621." *Upstate New York Eng'rs Health Fund v. Ransom*, No. 13-cv-1434, 2015 WL 145441,

at *4, 2015 U.S. Dist. LEXIS 2965, at *11 (N.D.N.Y. Jan. 12, 2015) (citing 29 U.S.C. § 1132(g)(2)(B)). Here, Ms. Serson has explained how she calculated the interest due on the delinquent contributions in accordance with Section 6.12 of the Inside Agreements, which provides for an interest rate of "2 percentage points over the prime rate per annum." (Dkt. No. 20-1, ¶¶ 11–14). Ms. Serson has also provided a chart of her calculations. (Dkt. No. 20-2, at 26). Thus, the interest sought is calculated in accordance with the parties' contractually agreed upon rates, and the Court awards $5,228.39 in interest on the unpaid contributions and deductions, together with continuing interest from November 4, 2022 to the date of judgment at a per diem rate of $14.324. Plaintiffs are entitled to post-judgment interest as a matter of right at the statutory rate prescribed by 28 U.S.C. § 1961(a). *See Trs. of Plumbers Local Union No. 1 Welfare Fund v. Temperini Mech. Inc.*, No. 18-cv-2596, 2020 WL 571680, at *3, 2020 U.S. Dist. LEXIS 6266, at *7 (E.D.N.Y. Jan. 13, 2020) (citation omitted).

Next, Plaintiffs seek to recover $3,613.99 in delinquent union dues. (Dkt. No. 20-1, at 6). This request is supported by the monthly contribution reports, (Dkt. No. 20-2, at 2–22), as well as a chart prepared by Ms. Serson summarizing the amounts due, (*id.* at 28). Thus, the Court awards Plaintiffs $3,613.99 in delinquent union dues.

### 2.     **Delinquencies Revealed by Audit**

Plaintiffs seek to recover $5,296.25 in delinquencies revealed by the audit performed for the period of June 15, 2015 to December 31, 2018. (Dkt. No. 20-1, at 7). The amount is supported by the auditor's results letter and is broken down as follows: (1) $4,460.00 due to the Health and Benefit Fund, (2) $557.50 due to the Annuity Fund, and (3) $278.75 due to the J.A.T.C. (Dkt. No. 20-2, at 32). Accordingly, the Court awards Plaintiffs $5,296.25 in additional amounts due.

### 3. Attorney's Fees and Costs

Plaintiffs seek and are entitled to recover the attorney's fees and costs they incurred in connection with their efforts to collect the delinquent contributions and deductions in this case. ERISA and the applicable provisions of the underlying contracts allow for such an award. *See* 29 U.S.C. § 1132(g)(2)(D) (reasonable attorney's fees and costs of the action); (*see also* Dkt. No. 20-6, at 59 (providing that the employer shall be liable for "legal and audit fees incurred to obtain or ascertain the amount of delinquencies")). In their initial motion for default judgment, Plaintiffs sought to recover $590.00 in costs and $3,500 in attorney's fees. (*See* Dkt. No. 14-1, ¶ 13; Dkt. No. 14-3, ¶ 13). The Court noted in its prior decision that Plaintiffs had not "provided any evidence in admissible form, such as billing records and hourly rates, substantiating [this] request." (Dkt. No. 16, at 11). In connection with the renewed motion for default judgment, Attorney Pozefsky states that he "did not keep contemporaneous time records" for the $3,500 he will bill his clients but that he "could conservatively re-construct time records by reference to contemporaneous emails, drafts, notes and documents," and he requests the Court's permission to do so. (Dkt. No. 20-5, ¶ 20). Attorney Pozefsky also seeks to recover "legal fees for work beginning with and in response to [his] receipt and review" of the Court's prior decision on October 17, 2022 and attaches contemporaneous time records from that date forward. (*Id.* ¶ 22; *see* Dkt. No. 20-6, at 61–64 (time records)).

"In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee.'" *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)) (brackets omitted). A "reasonable hourly rate" is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir.

13

2008). The Second Circuit has held that in calculating the presumptively reasonable fee, "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted).

Attorney Pozefsky states in his affidavit that he has been "representing labor unions and ERISA Employee Benefit Funds for many years" and has acted as counsel "seeking to collect ERISA delinquencies" in "dozens of cases" in the Northern District of New York. (Dkt. No. 20-5, ¶ 23). He has also represented benefits funds in Bankruptcy Court and before the Second Circuit. (*Id.*). Attorney Pozefsky's hourly rate is $250.00 and has been so "for several years." (*Id.* ¶ 24). The time records submitted indicate that Attorney Pozefsky spent 12.50 hours on this matter since the Court's prior decision on October 17, 2022. (Dkt. No. 20-6, at 61–64).

The Court concludes that Attorney Pozefsky's hourly rate and the number of hours expended preparing the renewed motion for default judgment are reasonable. *See Eng'rs Joint Welfare Fund v. C. Destro Dev. Co.*, 178 F. Supp. 3d 27, 35–36 (N.D.N.Y. 2016) ("[C]ases in the Northern District have upheld hourly rates between $250 and $345 for partners." (citing *Pope v. County of Albany*, No. 11-cv-736, 2015 WL 5510944, at *9, 2015 U.S. Dist. LEXIS 123379, at *25–26 (N.D.N.Y. Sept. 16, 2015) (collecting cases))). Accordingly, the Court awards $3,125.00 in attorney's fees for work performed from October 17, 2022 to date. The Court also grants Attorney Pozefsky's request to submit reconstructed time records for work performed prior to October 17, 2022.

With regard to costs, Plaintiffs have submitted documentation supporting their request for $150.00 in service of process, not $190.00. (Dkt. No. 20-6, at 66 (service invoice)). The Court will also award the $402.00 filing fee paid in this case, as evidenced by the civil cover sheet filed

with the complaint. (Dkt. No. 1-1). Thus, the Court awards a total of $552.00 in costs and $3,125.00 in attorney's fees, for a total of $3,677.00.

### 4. Dean Burbank

Of the amounts listed above, Plaintiffs seek to hold Dean Burbank personally and jointly liable for the delinquent contributions to the Funds, interest on those delinquent contributions, and delinquencies revealed by the audit insofar as they relate to the Funds, in the total amount of $35,093.16. (Dkt. No. 20-1, at 7). Plaintiffs do not seek to hold Dean Burbank individually liable for amounts due to the J.A.T.C. or for union dues. (*Id.*). The amounts requested are supported by the same documentation referenced above and are recoverable under Plaintiffs' ERISA causes of action. Plaintiffs are also entitled continuing interest on this amount from November 4, 2022 to the date of judgment at a per diem rate of $13.29. Dean Burbank is also liable under ERISA for the attorney's fees and costs awarded.

Accordingly, the Court holds Dean Burbank jointly liable with Burbank for $38,770.16 of Plaintiffs' total damages award.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' renewed motion for default judgment (Dkt. No. 20) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs are awarded judgment against Defendant Burbank Electrical Contractor, Inc. for the sum of $44,441.81, which includes $25,224.76 in delinquent contributions to the Funds; $1,401.42 in delinquent contributions to the J.A.T.C.; $5,228.39 in interest on delinquent contributions, together with interest from November 4, 2022 to the date of judgment at a per diem rate of $14.324; $3,613.99 in delinquent union dues; $5,296.25 in delinquencies revealed by the audit; and $3,677.00 in costs and attorney's fees; and it is further

**ORDERED** that Plaintiffs are awarded judgment against Defendant Dean Burbank for the sum of $38,770.16, which includes $25,224.76 in delinquent contributions to the Funds; $4,850.90 in interest on delinquent contributions, together with interest from November 4, 2022 to the date of judgment at a per diem rate of $13.29; $5,017.50 in delinquencies revealed by the audit; and $3,677.00 in costs and attorney's fees, and that Defendant Dean Burbank shall be jointly and severally liable with Defendant Burbank Electrical Contractor, Inc. for this sum, which is included in the total award above; and it is further

**ORDERED** that Plaintiffs are awarded post-judgment interest on all money awards at the rate provided for by 28 U.S.C. § 1961(a); and it is further

**ORDERED** that Plaintiffs may file a supplemental application for attorney's fees by April 27, 2023; and it is further

**ORDERED** that Plaintiffs serve copies of this Memorandum-Decision and Order on Defendants and file a certificate of service.

**IT IS SO ORDERED.**

Dated: <u>April 6, 2023</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge